# IN THE DISTRICT COURT
# FOR THE TERRITORY OF GUAM

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

MARK S. SMITH and GLENN D. WONG,

    Defendants.

Case No.: 17-cr-00020

**DECISION AND ORDER DENYING DEFENDANT WONG'S MOTION TO DISMISS INDICTMENT**

## I. INTRODUCTION

The jury trial held in this criminal case against Defendants Mark Smith and Glenn Wong ended in a mistrial on September 22, 2017. Defendant Wong has now moved to dismiss the indictment against him. (Mot. to Dismiss, ECF No. 194.) The motion has been fully briefed,[1] and argument was heard on October 27, 2017.

For the reasons that follow, Defendant's motion is denied.

## II. BACKGROUND

The background of how this case proceeded during trial and ended in a mistrial have been explained in detail in the Court's order declaring a mistrial, and are incorporated by reference here. (ECF No. 174.) Nonetheless, some of the details merit discussion here.

---

[1] Defendant Wong's Motion to Dismiss, ECF No. 194; Maher Decl., ECF No. 195; Erratum, ECF No. 201; Government's Brief in Opposition, ECF No. 209; Defendant Wong's Reply Brief, ECF No. 216; Defendant Wong's Supplemental Submission, ECF No. 217.

1

Defendant Smith first moved for a mistrial on September 15, 2017, on the ground that the jury was prejudiced from the publication to the jury of Exhibit GE18a, pages 713–14, which was a set of emails that contained a reference to GHURA's then-counsel, David Lujan, and discussing Mr. Lujan's conflict of interest as counsel for GHURA. At that time, Mr. Maher, counsel for Wong, joined the motion, arguing that his client was prejudiced by the "taint" on Mr. Lujan's credibility. (Tr. (9/15/17) 42–43, ECF No. 192.) After hearing argument from the parties, the Court denied the oral motion. However, given Mr. Lujan's concern that the jury's knowledge of his prior conflict of interest as GHURA counsel may make it impossible for him to represent Smith, the Court ordered the Government to redact Mr. Lujan's name from its exhibits.

Four days later, Smith filed a motion for reconsideration of the denial of the motion for a mistrial based on the publication. (ECF No. 161.) The Government responded that the request should be denied, and then it requested a mistrial on the ground that Mr. Lujan had an actual conflict of interest and should be disqualified. (ECF No. 165.) Additionally, the Government submitted a second request for a mistrial on the ground that Mr. Lujan improperly prejudiced the jury during opening statements. (ECF No. 160.) Further, the Government requested reconsideration of the Court's order that it redact Mr. Lujan's name from all exhibits. (ECF No. 159.)

On September 21, 2017, the Court heard argument on all of these motions. (*See* Minutes, ECF No. 173; Tr. (9/21/17), ECF No. 196.) Wong, through counsel, joined Smith's motion for reconsideration and presented argument. (*See id.*) Following the hearing, Wong filed a formal notice of joinder. (ECF No. 171.)

On September 22, 2017, the Court reconvened with the parties and announced it had decided

2

to grant the Government's motion for a mistrial based on manifest necessity and ordered that Mr. Lujan be disqualified. The Court thereafter asked if "there are any comments or questions at this time before I bring the jury in?" (Tr. (9/22/17) 3, ECF No. 197.) No comments were offered, and the Court then discharged the jury. After the jury had been discharged, the Court informed the parties of the date for a retrial and that a written order would be filed. (*Id*. at 5.) Again, the Court asked the parties if "there are further comments or concern at this time?" (*Id*. at 6.) All parties and counsel declined to comment. (*See id*.) A 19-page order setting forth the reasons for the mistrial was filed later that day. (ECF No. 174.)

Defendant Wong has now filed this motion to dismiss the indictment on the grounds that double jeopardy bars his retrial. (ECF No. 194.)

### III. LEGAL STANDARD

Wong submits that double jeopardy bars a second trial and the indictment against him must therefore be dismissed.

Generally, if a defendant requests or consents to a mistrial, double jeopardy does not attach and the defendant may be retried. *Oregon v. Kennedy*, 456 U.S. 667, 683 (1982). However, if the Government requests a mistrial or defendant does not consent to the mistrial, double jeopardy applies absent a showing by the Government that the "mistrial was justified by manifest necessity." *Id*. Additionally, a defendant's consent is vitiated and double jeopardy bars retrial if the defendant can show "the prosecutor intended to provoke a mistrial or otherwise engaged in 'overreaching' or 'harassment.'" *Id*. at 683–84.

The "manifest necessity" standard is satisfied "when there is a 'high degree' of necessity." *Id*.

3

(quoting *Arizona v. Washington*, 434 U.S. 497, 506 (1978)). In determining whether manifest necessity exists, a trial court should ensure that it has "(1) heard the opinions of the parties about the propriety of the mistrial, (2) considered the alternatives to a mistrial and chose the alternative least harmful to a defendant's rights [and/or] (3) acted deliberately instead of abruptly." *United States v. Chapman*, 524 F.3d 1073, 1082 (9th Cir. 2008) (quoting *United States v. Bates*, 917 F.2d 388, 396 (9th Cir. 1990)). The determination also "must be based on evidence presented in the record." *Id.* (citing *United States v. Bonas*, 344 F.3d 945, 948-51 (9th Cir. 2003)).

### IV. ANALYSIS

Wong contends that double jeopardy bars a second trial on the indictment because he did not consent to a mistrial, was not given opportunity to comment on or consent to a mistrial, and the manifest necessity articulated by the Court applied only to Smith. (*See generally* Mot. to Dismiss.)[2]

**a. Whether Defendant Wong Consented to the Mistrial**

The Government contends that Wong implicitly consented by requesting a mistrial and failing to object when given the opportunity to do so. (Opp. Br. 4–5, ECF No. 209.) Wong argues that he did not consent to the mistrial. (Mot. to Dismiss 1; Reply Br. 4–5.)

---

[2] At the October 27, 2017, defense counsel referred the Court to *United States v. Preston*, --- F.3d ---, 2017 WL 4638022 (9th Cir. 2017). He specifically referenced the following: "In deciding whether the combined effect of multiple errors prejudiced a defendant we ask whether the errors stand in 'unique symmetry . . ., such that [they] amplify each other in relation to a key contested issue in the case.'" 2017 WL 4638022, at *3 (quoting *Ybarra v. McDaniel*, 656 F.3d 984, 1001 (9th Cir. 2011)). It is unclear how counsel believes this case applies to the situation here. *Preston* dealt with defendants who were convicted at trial, and the Ninth Circuit concluded the cumulative effect of multiple errors rendered the trial fundamentally unfair. *Id.* at *12–13. This case does not involve a conviction. It involves a mistrial. If anything, the Court reads the case to suggest that it was correct in declaring a mistrial based on the prejudice to Defendants from the multiple ways in which the jury might have been exposed to Mr. Lujan's conflict as GHURA counsel. If defense counsel were suggesting the Court committed multiple errors in declaring a mistrial, the argument is unfounded as detailed below.

4

Double jeopardy does not bar a mistrial when a defendant consents, expressly or implicitly, to the mistrial. *United States v. You*, 382 F.3d 958, 964 (9th Cir. 2004). A court "may infer consent only where the circumstances positively indicate a defendant's willingness to acquiesce in the mistrial order." *Id*. at 964–65 (quoting *Weston v. Kernan*, 50 F.3d 633, 637 (9th Cir. 1995)).

Here, the Government points out that Wong did not object to the mistrial at the time the Court indicated it was inclined to grant a mistrial or at the time a mistrial was declared. While this may suggest consent, consideration of the entire record demonstrates that Wong did not acquiesce to the declaration of a mistrial based on manifest necessity. Wong joined Defendant Smith's motion for a mistrial and subsequent motion for reconsideration of the decision denying a mistrial. Defendants' motion for reconsideration contended that the Government had provoked them into requesting a mistrial and therefore double jeopardy would bar retrial. (*See* ECF No. 161.) They also argued in opposition to the Government's request for a mistrial. In fact, Wong, through counsel, accused the Government of acting in bad faith by attempting to disqualify Mr. Lujan. Given that Mr. Lujan's conflict of interest was one basis of the Government's request for a mistrial, it cannot fairly be inferred that Wong consented to the Government's motion for a mistrial.

The Government points to three cases to demonstrate that Wong consented. *United States v. You* addressed an instance in which You's co-defendant moved for a mistrial and in so doing said that he did not believe double jeopardy barred retrial. 382 F.3d at 965. You said nothing, and the Ninth Circuit held that he impliedly consented through silence. *Id*. This case does not positively indicate that Wong consented to the mistrial. In stark contrast to *You*, Wong expressly joined his co-Defendant's motion for reconsideration of the denial of a mistrial, which was denied as moot, and also

5

argued against the Government's request for a mistrial.

Next, the Government looks to *United States v. McKoy*, a case in which the Ninth Circuit held that defendants impliedly consented because they asked for and were granted a mistrial. 78 F.3d 446, 449 (9th Cir. 1996). Even though the *McKoy* case may initially suggest the Court should find that Wong impliedly consented because he too asked for a mistrial, once the facts are considered, it is clear that *McKoy* is not controlling. The trial court in *McKoy* granted the defendants' motion for a mistrial. This Court granted the Government's request for a mistrial based on manifest necessity. Furthermore, Wong opposed the Government's contention that Mr. Lujan must be disqualified and a mistrial declared.

Finally, the Government relies on *United States v. Smith*, a case in which the trial court *sua sponte* granted a mistrial because the jury had only eleven (11) members and defendant did not consent to a jury of 11. 621 F.3d 350, 351 (9th Cir. 1980). The Ninth Circuit held that the defendant impliedly consented by failing to object to the order of mistrial "despite adequate opportunity to do so." *Id*. at 352. It should be apparent that this case does not govern the outcome here. No *sua sponte* declaration of a mistrial was made. Wong may not have objected at the time the Court announced the declaration of mistrial, but he certainly was not silent on the issue during the other opportunities to object. Instead, he joined his co-Defendant's motion that requested the Court declare a mistrial due to prosecutorial misconduct. Considering the record as a whole, there is no positive indication that Wong consented to the order of a mistrial based on manifest necessity.

**b. Whether the Court Violated Rule 26.3**

Defendant next submits that double jeopardy bars retrial because in declaring a mistrial, the

6

Court violated Fed. R. Crim. P. 26.3 by not giving the parties an opportunity to comment on or consent to its declaration of a mistrial. (Mot. to Dismiss 4–5.) The Government responds that the Court did not violate Rule 26.3 because all parties were offered an opportunity to argue the motions and to object to the entry of mistrial. (Opp. Br. 6–8.)

Under Rule 26.3, "[b]efore ordering a mistrial, the court must give each defendant and the government an opportunity to comment on the propriety of the order, to state whether that party consents or objects, and to suggest alternatives." Fed. R. Crim. P. 26.3. As Wong points out, the Rule was "designed to reduce the possibility of an erroneously ordered mistrial," especially in light of several cases, *United States v. Dixon*, 913 F.2d 1305 (8th Cir. 1990), and *United States v. Bates*, 917 F.2d 388 (9th Cir. 1990). Fed. R. Crim. P. 26.3 advisory committee's note.

Here, the Court complied with the procedural mandate of Rule 26.3. When Smith and Wong made their first motion for a mistrial based on the brief publication of exhibit GE18a, pages 713–14 to the jury, the Court denied the motion and offered to poll the jury to determine if they had seen and were influenced by the exhibit. Defendants did not consent to the poll. When the Government filed its motion for a mistrial and Defendant Smith indicated he would renew his motion for a mistrial, the Court set a briefing schedule and hearing date.

The Government then filed a brief in support of its motion for a mistrial and objected to Defendants' motion. In turn, Defendants filed a written brief in support of their motion for reconsideration of the denial of a mistrial, and filed an opposition to the Government's motion for a mistrial. After the motions were fully briefed, the Court held a motions hearing on September 21, 2017 at which all parties were heard. At the outset, the Court gave notice of its inclination to deny the

7

Government's motion based on Mr. Lujan's opening statement, but gave notice that it needed more information and argument on the Government's alternative motion based on manifest necessity. It also heard Defendants' motion for reconsideration. At the conclusion of the hearing, the Court announced that it was inclined to declare a mistrial, but took the motions under advisements.

The next day, on September 22, 2017, the Court declared a mistrial and offered the parties an opportunity to comment. None of the parties made any comments. After the Court discharged the jury, it again offered the parties an opportunity to comment. Again, none of the parties commented. In light of this sequence of events, Wong cannot reasonably argue that the Court denied the parties an opportunity to comment, consent or object, and suggest alternatives. *See Arizona v. Washington*, 434 U.S. 497, 514 n.34 (1978) (finding trial court did not act precipitously where it first denied the motion for a mistrial, and once the motion was renewed, heard extensive argument from both sides on the need for a mistrial); *see also Renico v. Lett*, 559 U.S. 766, 791 (2010) (referring to Fed. R. Crim. P. 26.3 and citing *Arizona* with approval).

This conclusion is emphasized by the *Bates* and *Dixon* cases relied on by Wong. In *Bates*, the prosecution sought to introduce evidence that defendants shot at an officer during a car chase, which the trial court ruled would be admissible if proper foundation was laid. 917 F.2d at 390. During trial, the officer testified that she was pursuing the car, and in response to being asked to describe what happened during this time, she responded that the passenger of the car began shooting at her. *Id*. The Court *sua sponte* declared a mistrial, and after the prosecutor asked to be heard, responded, "You can say anything you want in writing . . . I don't want to hear from you again." *Id*. The government then submitted a letter in writing, but the Court never responded. *Id*. at 391. On appeal, the Ninth Circuit

8

concluded that the trial judge abused its discretion in declaring a mistrial because it did not allow the parties to comment, did not explore alternatives, and "acted instantaneously, not deliberately." *Id*. at 397–98.

The circumstances of *Bates* are a far cry from what occurred in this case. Here, the Court did not *sua sponte* declare a mistrial. The parties requested a mistrial, albeit on different grounds and without consenting to the motions of the opposing party. Moreover, as set forth above, the Court heard argument from the parties on every motion for a mistrial, whether an oral or written motion. Thus, Wong's reliance on *Bates* to demonstrate that this Court violated Rule 26.3 is unavailing.

The same is true of Wong's reliance on *Dixon*. There, the prosecution *ex parte* informed the trial judge about a news report on the trial that had run the night after the jury had been sworn, but not yet instructed to avoid media coverage of the trial. 913 F.2d at 1307. The judge then viewed a video of the report in the prosecution's office. *Id*. The court thereafter convened the parties and *sua sponte* declared a mistrial. *Id*. Defense counsel objected and suggested that the court question the jury about the news story. *Id*. The trial court declined to do so and discharged the jury. *Id*. On appeal, the Eighth Circuit held that the court abused its discretion in declaring a mistrial because "[t]here was no opportunity for discussion of any kind," and after defense counsel objected, the trial court replied, "Of course you will [object], but I don't care whether you do or not." *Id*. at 1313.

Again, the actions of the trial court in *Dixon* are distinct from what occurred in this case, as set forth above. Defendant's contention that *Dixon* demonstrates the Court failed to give the parties an opportunity to comment, consent or object, and to suggest alternatives is therefore unpersuasive. Accordingly, defendant Wong's motion to dismiss based on a violation of Rule 26.3 is denied.

9

### c. Whether the Court Erred in Declaring Mistrial for Manifest Necessity

Wong last contends that double jeopardy bars a retrial because the Court erred in declaring a mistrial based on manifest necessity for the following reasons: (1) the problems identified related solely to Smith; (2) the Court failed to consider feasible alternatives; and (3) the Court failed to explain why it reconsidered its order that the Government redact all exhibits and why it disqualified Mr. Lujan.

First, Wong claims that he did not benefit from the mistrial because the problems related solely to his co-defendant Smith and there was no manifest necessity to declare a mistrial as to both Defendants. It is difficult to square this assertion with Wong's decision to join Smith's oral motion for a mistrial, in which he claimed that he was prejudiced by the "taint" on his co-Defendant due to the conflict of interest, especially since the Defendants were charged with a conspiracy. (*See* Tr. (9/15/17) 42–43, ECF No. 192.) As the Court set out in the September 22, 2017 order, the trial "would not appear fair to observers with regard to defendants or to the Government" because of the conflict between Smith and his attorney. (Order 17.) This is because if the Court did not require redaction of Mr. Lujan's name, the jury would learn of Mr. Lujan's conflict of interest, and this would then damage Smith's defense, and Wong's due to the conspiracy charge, to a greater extent than if Mr. Lujan were not serving as counsel. In particular, Defendants jointly designated Anthony Perez as an expert witness who was expected to testify that Smith did not have a conflict of interest. Mr. Perez worked with Mr. Lujan, and the Government anticipated cross-examining him on his knowledge of Mr. Lujan's conflict as GHURA counsel. A jury may well find Mr. Perez's opinion not credible due to his past knowledge of Mr. Lujan's conflict as GHURA counsel, and, in turn, may look more unfavorably on Defendants who jointly chose to call the witness. By disqualifying Mr. Lujan and

10

ordering a mistrial, the Court acted to protect the right of both Defendants to a fair trial even though much of the order was dedicated to Smith, whose counsel was the individual with a conflict of interest.

Next, Wong asserts that the Court failed to consider reasonable alternatives to declaring a mistrial, including severing Defendants and allowing Mr. Nicolaysen to represent Smith. (Mot. to Dismiss 8.)

The Court did not act hastily by failing to consider severance as an alternative. Wong, through counsel, maintained during trial—and when requesting a mistrial—that he had already been prejudiced by the "taint" on co-Defendant's counsel given that this was a conspiracy case, and had he known that evidence of Mr. Lujan's conflict of interest as GHURA counsel would be admitted, he would have moved to sever. In the motion, and as argued at the October 27, 2017 hearing, Wong argued through counsel that severing would have been an option because the evidence as to Mr. Lujan's conflict as GHURA counsel would not have been prejudiced him. Defendant cannot have it both ways. Either he was prejudiced due to the "taint" from his co-Defendant's issues at the time the mistrial was declared and therefore already denied a fair trial or he had not suffered prejudice and could have proceeded without Smith. This is borne out by the reason for granting a motion to sever, had Wong in fact asked for it. A motion to sever should be granted "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). Thus, if a motion to sever had been made and granted, it would have been because the trial rights of Wong had been compromised. Continuing the trial despite the prejudice would not have served Wong's interests in receiving a fair trial, indicating a mistrial was the appropriate remedy. *See United States*

11

*v. Mayfield*, 189 F.3d 895, 906 (9th Cir. 1999) (noting that after defendant began to object and move for severance during trial based on prejudice from co-defendant's statements, "[e]ven the government recognized the risk of prejudice and accordingly objected to some of [co-defendant's] counsel's tactics out of fear of running into mistrial territory") (internal quotations omitted); *United States v. Nash*, Case No. 08-cr-1377, 2009 WL 2219274, at *2 (D. Ariz. July 23, 2009) (noting that motion to sever "can be raised at any time, including during trial, potentially necessitating a mistrial for both Defendants").

    In his reply brief, Wong maintains that counsel's statement that he would have moved to sever before trial indicates the Court should have considered severance as an alternative during trial. (Reply Br. 3, ECF No. 216.) But as set forth above, severance was not a feasible alternative during trial based on the arguments presented by defense counsel that Wong had already been prejudiced by his co-Defendant's situation. Moreover, had counsel for Wong believed otherwise, he should have made it clear at the time that he believed prejudice to his client could have been cured by severance instead of joining Smith's motion for a mistrial. For counsel to now suggest the comment that he "*would* have sought severance" prior to trial (Reply Br. 3 (emphasis added)) was sufficient to indicate that he was seeking severance during trial is unfounded. This argument is as ill-suited to the facts of what transpired as the case relied on. In *United States v. Gaytan*, the court *sua sponte* declared a mistrial "without pausing for any discussion of the possibility of other remedies." 115 F.3d 737, 743 (9th Cir. 1997). That was not the case here, where the Court attempted to balance the rights of the parties by initially ordering the Government to redact Mr. Lujan's name, and upon receiving additional motions, ordering briefs from the parties, and hearing oral argument on the propriety of a mistrial.

12

With respect to Mr. Nicolaysen, he was admitted *pro hac vice* to assist in representing Smith oppose the Government's initial motion to disqualify Mr. Lujan. As is clear from a recording of the May 11, 2017 conference at which Mr. Nicolaysen's *pro hac vice* application was granted, the Court indicated that his appearance was specifically to address the limited issue of whether Mr. Lujan should be disqualified. The minutes of the May 11, 2017 conference also state that the Court "grants the *pro hoc vice* application," and would allow Mr. Nicolaysen "to appear via telephonic appearance at the next hearing," which was the hearing on the motion to disqualify. (Minutes, ECF No. 54.) The transcript pointed to by defense counsel also does not affirmatively indicate that Mr. Nicolaysen intended to continue representing Smith in future proceedings. The excerpt pointed to by defense counsel is as follows:

> Ms. David: So is Mr. Lujan confirming in light of the Court's ruling that pro hac vice counsel's appearance was limited to this hearing only?
>
> Mr. Lujan: No, I'm not confirming that but you know I will also discuss with Mr. Nicolaysen.

(Tr. (5/17/17) 69, ECF No. 81.)

At most, this exchange indicates that it was undecided whether Mr. Nicolaysen would be appearing on Smith's behalf at future proceedings in this case. Any ambiguity on this point is resolved by the subsequent proceedings. After the May 17, 2017 hearing, no further notice to the Court was given to indicate that Mr. Nicolaysen continued representing Smith or was involved in trial preparation. He did not appear at any future hearings and did not appear during trial. Moreover, after Mr. Lujan was disqualified Mr. Lujan, the Court addressed Smith as proceeding *pro se*. Neither Smith, Wong, or Wong's counsel corrected the Court otherwise.

13

Also, under Guam Local Rule 17.1, an attorney admitted *pro hac vice* may not appear in this District without local counsel. LR 17.1(d)–(e). Thus, with Mr. Lujan disqualified, Mr. Nicolaysen was not eligible to step in immediately and conduct the trial. Smith also acknowledges this limitation, as set forth in his motion to continue the trial date, which indicates he is still searching for qualified, conflict-free counsel. (Mot. to Continue 2–3, ECF No. 211.) Having Mr. Nicolaysen continue the trial after Mr. Lujan was disqualified was therefore not a plausible alternative, and the Court did not err in failing to consider it.

Finally, Wong submits that the Court acted abruptly in declaring a mistrial and failed to articulate sufficient reasons as to why it reconsidered its order that the Government redact the exhibits and prior decision not to disqualify Mr. Lujan. (Mot. to Dismiss 8–9.) As an initial matter, counsel for Wong misstates the record. He writes that "at the conclusion of the motions hearing on September 21 [the Government] had failed to demonstrate to the Court's satisfaction how its proposed exhibits constituted a conflict for the co-defendant's attorney," but "nonetheless concluded the hearing and with no more explanatory information in hand than it had on May 24, 2017, the following morning, the Court reversed itself." (*Id*. at 8.)

A review of the transcript of the September 21, 2017 hearing indicates that the Court stated at the close of the hearing "more information was presented to the Court than what . . . was given in the written briefs," and given this information, was "inclined to actually declare a mistrial." (Tr. (9/21/17) 49–50, ECF No. 196.) Nowhere did the Court state at the close of the hearing, as defense counsel contends, that it did not see a conflict of interest.

Furthermore, the Court certainly had more information at the time a mistrial was declared than

14

it had from any of the parties when the original motion to disqualify was argued and decided in April and May 2017. As defense counsel is well aware from reading the Government's original motion to disqualify (ECF No. 30) and the opposition brief to Defendant Smith's motion for reconsideration (ECF No. 165), and from participating in the motions hearing on September 21, 2017, the Court had substantially more information at the time it declared a mistrial. In denying the Government's first motion to disqualify, the Court wrote that the Government had failed to demonstrate why Mr. Lujan should be disqualified because it "submitted no affidavits or testimony," "ha[d] not named the GHURA officials or employees that it plans to call to the stand at trial," and "not made an offer of proof as to what testimony GHURA personnel would give." (Decision and Order 5, ECF No. 78.) By contrast, during trial, the Court learned of the Government's theory of the case and proposed exhibits, and of both Defendants' designation of Mr. Perez as their expert witness.

In addition, the first motion to disqualify claimed Mr. Lujan had a conflict with a former client, GHURA, not a conflict between himself and Smith. Given that the Government asked the Court to consider a new and different reason for disqualifying Mr. Lujan during trial, and provided exhibits and specific examples of expected testimony, it cannot reasonably be said that the Court acted without any new information to require reconsideration.

The conflict of interest between Mr. Lujan and Smith therefore crystallized only during the trial. As the Supreme Court has explained, "[t]he likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict." *Id*. at 162–63. This was entirely true here. The conflict may have been obvious to the parties back in April or May 2017, but the Court was left unapprised of whether an actual conflict existed and therefore declined to deny Smith his choice of counsel. The

15

actual conflict was demonstrated only during trial, at which point the Court revisited its disqualification decision, as explained in the September 22, 2017 order.

Defendant Wong, through counsel, expresses astonishment that the Court ordered Mr. Lujan disqualified despite having declined to do so four months previously. The Court is equally astonished at defense counsel's expression of confusion. As detailed above, counsel's recitation of the record is incomplete and inaccurate. Moreover, he is well aware that all attorneys have a continuing duty to examine whether they have a conflict of interest that hampers effective representation of their clients, and courts similarly have a duty to protect criminal defendants from counsel's conflicts. *Wheat v. United States*, 486 U.S. 153, 161 (1988) (holding court has a duty to eliminate or prevent conflicts of interest to ensure Sixth Amendment rights are met). Thus, it should come as no surprise to Wong and his counsel that the Court revisited its decision to disqualify Mr. Lujan once exhibits, proposed witnesses, and the theories of each side's case showed the conflict of interest.

Defendant also criticizes the Court's decision to declare a mistrial because only one of the reasons advanced by the Government during the motion hearing—the potential testimony of Mr. Anthony Perez—is reflected in the order. (Mot. to Dismiss 9.) Further, Defendant argues that the Government's expected cross-examination of Mr. Perez would not be permissible under *United States v. Rowe*, 96 F.3d 1294 (9th Cir. 1996). *Rowe* addressed a situation in which a partner at a law firm asked two of his associate attorneys to investigate another partner at the firm regarding irregularities in the handling of client funds. 96 F.3d at 1295–96. The Ninth Circuit considered whether the associates' communications with the partner were privileged, and concluded that they were. *Id*. at 1296.

16

The Government does not dispute that attorney-client privilege exists as between Mr. Lujan and Mr. Perez with respect to communications they had about client matters. However, the Government stated it did not intend to ask about communications between Mr. Lujan and Mr. Perez as to client matters. It sought to inquire as to Mr. Perez's knowledge of Mr. Lujan's conflict of interest as GHURA counsel to discredit Mr. Perez's expected opinion that Smith did not have a conflict of interest. The fact that Mr. Lujan had a conflict of interest is not privileged. Communications that Mr. Perez may have had about it with Mr. Lujan might be subject to attorney-client privilege, but the Government is not foreclosed by attorney-client privilege from asking whether Mr. Perez was aware of the conflict, describing the facts to him and then asking why he concluded, in his expert opinion, that Smith, based on similar facts, did not have a conflict. Thus, *Rowe* does not demonstrate that the Court erred in concluding that Mr. Perez's proposed testimony created a conflict of interest between Smith and Mr. Lujan.

## V. CONCLUSION

For the reasons set forth above, Defendant Wong's motion to dismiss the indictment (ECF No. 194) is DENIED.

**SO ORDERED** on October 27, 2017.

_____
RAMONA V. MANGLONA, Designated Judge

17